**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| VERNON WHITE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | CASE NO. 05 C 2445 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| NEDRA CHANDLER, Warden | ) | |
| Dixon Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

In 2000, Petitioner Vernon White ("Petitioner" or "White") was convicted of first-degree murder in the Circuit Court of Cook County, Illinois and was sentenced to 42 years in prison. White has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. §2254.[1] See [1]. For the reasons set forth below, White's petition for habeas corpus relief [1] is denied.

## I.    Background

### A.    Factual Background

Petitioner does not present clear and convincing evidence challenging the statement of facts set forth in the Illinois Appellate Court's decision on direct appeal, and thus the Court presumes those facts are correct for purposes of its habeas review. See 28 U.S.C. § 2254(e)(1); *Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). Therefore, the Court adopts the following

---

[1] When Petitioner filed his habeas petition, he properly named Terry Polk as Respondent, since Polk was the warden at the Western Illinois Correctional Center at the time of filing. Petitioner has since been moved to Dixon Correctional Center where Nedra Chandler is the warden. In accordance with Rule 2 of the Rules Governing Section 2254 Cases, Ms. Chandler is the proper "state officer having custody of the applicant," and thus is substituted as the named respondent in this case. See *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005); *Rumsfeld v. Padilla*, 542 U.S> 426, 435 (2004) (citing *Hogan v. Hanks*, 92 F.3d 189, 190 (7th Cir. 1996)).

account from the Illinois Appellate Court's Rule 23 Order on direct appeal in *People v. White*, No. 1-01-0768 (Ill. App. Ct. 2002).

White's conviction arose from the shooting death of Leslie Logan on September 30, 1996. Rule 23 Order, *People v. White*, No. 1-01-0768 (Ill. App. Ct. 2002), Ex. C at 1.[2] Around 2:30 p.m. on that date, police responded to a report of shots fired at the intersection of West Huron Street and North Lawndale Avenue, in Chicago. *Id.* at 13. Police found Logan lying face down in a nearby alley, with a pool of blood around his head. *Id.* At that time, Logan was still alive, but was unable to speak. *Id.* He was taken to the hospital, where he later died as a result of two gunshot wounds to the head. *Id.* at 14. One bullet was recovered from Logan's head, and a shell casing was found across the alley from the pool of blood, in a vacant lot. *Id.* A firearms examiner determined that the bullet was of 9 millimeter Luger caliber, and that the shell casing was fired from a 9 millimeter Luger. *Id.*

Iris Terry was sitting on the porch at her home on North Ridgeway Avenue, with her young son, on the afternoon of September 30, 1996. *Id.* at 14, 15. Just before 2:30 p.m., a man she knew as "Dre" told her to go inside. *Id.* at 15. After entering the apartment, Terry heard gunshots and dropped to the ground to cover her son. *Id.* She waited a minute or two before getting up to look out the front window. *Id.* There, Terry saw White and a man named "Corn" run by. *Id.* Both men were wearing black hooded sweatshirts and carrying guns. *Id.* Terry did not seek out police, and did not talk to anyone about the incident until more than a year later, on November 16, 1997, when detectives came to her house to question her. *Id.*

On November 16, 1997, Terry spoke with Chicago police sergeant Dominic Rizzi, who at the time was a violent crimes detective (and will hereinafter be referred to as "Detective Rizzi").

[2] For ease of reference, the Court will refer to the state court materials that accompanied Respondent's Answer (as required by Rule 5(d) Governing Section 2254 Habeas Cases) by their exhibit designation.

*Id.* After speaking with Terry about Logan's murder, Detective Rizzi began looking for White. *Id.* Early in the morning on January 21, 1998, White was arrested for the unrelated murder of Cornell Williams. *Id.* at 1. Detective Rizzi and his partner learned that White was in custody and went to the police station to talk with him. *Id.* at 15. At about 6 a.m. on January 21, 1998, they introduced themselves to White, who was in an interview room, and told him that they were investigating Logan's murder. *Id.* That afternoon, around 3 p.m., White approached Detective Rizzi, and after being advised of his constitutional rights, had a twenty- to thirty-minute conversation about Logan's murder. *Id.* at 15, 16.

White told Detective Rizzi that he had been walking with his friends "Larry"[3] and "Von," when Larry told him that "some guys" were selling drugs on his spot in the alley. *Id.* at 16. The three men then put on hooded sweatshirts, got guns, and went to the alley. *Id.* White specifically noted that he was carrying a 9 millimeter pistol, Larry was carrying a .25 caliber pistol, and Von had a .357 handgun. *Id.* After arriving in the alley, they confronted the man selling drugs. *Id.* White explained that he asked the man why he was selling drugs in that location, and that Larry then shot the man in the head. *Id.*

Detective Rizzi returned to the interview room around 6 a.m. the next morning, January 22, 1998, to talk with White, and they again spoke for twenty to thirty minutes. *Id.* at 10. Later that day, around 1 p.m., Assistant State's Attorney Karen Wehrle visited White. *Id.* at 11. Wehrle introduced herself and gave White *Miranda* warnings. *Id.* The two then discussed the Logan murder, and with White's permission, Wehrle reduced his statements to writing. *Id.* White signed each page of the written statement. *Id.* at 11, 12.

---

[3] "Larry" was later identified as Larry Smith. Although Iris Terry was familiar with him, she stated that she did not see him on the day of the shooting. Ex. C at 15, 16.

### B. Procedural History

White was charged with first-degree murder on January 22, 1998, and was indicted by an Illinois grand jury on February 9, 1998. Report of Proceedings and Order Dismissing Post-Conviction Petition, *People v. White*, Circuit Court of Cook County (April 28, 2003 and May 2, 2003), Ex. G at 3; Indictment, Ex. N. A jury in the Circuit Court of Cook County found White guilty of first degree murder on December 11, 2000. Jury's Verdict, *People v. White*, 98-cv-04526(01), Ex. M. He received a sentence of 42 years in prison on January 26, 2001. Ex. C at 1. White filed an appeal, raising three claims: (1) that his oral statement to Detective Rizzi was coerced and should have been suppressed as involuntary, (2) that he was not proven guilty of first-degree murder beyond a reasonable doubt, and (3) that his 42-year sentence was excessive. Pet. Direct App. Br., Ex. A at 5-6. On March 22, 2002, the Appellate Court of Illinois affirmed White's conviction and sentence on appeal. Ex. C at 27. The Illinois Supreme Court denied White's motion for leave to appeal on October 2, 2002. Order denying PLA (October 2, 2002), Ex. E.

After his unsuccessful direct appeal, White filed a petition for post-conviction relief in the Circuit Court of Cook County, raising six claims: (1) that the State unlawfully pursued a second charge of "accountability" at trial which surprised the defense and created a presumption of guilt, (2) that the State knowingly used false and perjured testimony in an attempt to mislead the jury, (3) that the trial judge erred in allowing the State to pursue the second "accountability" charge and in directing a verdict of guilty, (4) that he was convicted under a statute that is unconstitutionally overbroad and vague, (5) that he received ineffective assistance of trial counsel, and (6) that he received ineffective assistance of appellate counsel. Post-Conviction Pet., Ex. F at 2-3. His post-conviction petition was denied on May 2, 2003. Ex. G. White

appealed the denial, and his counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Def. Counsel's *Finley* Motion to Withdraw, Ex. H. On March 26, 2004, the Illinois Appellate Court affirmed the denial of White's petition and allowed counsel to withdraw. Rule 23 Order, *People v. White*, No. 1-03-01632 (Ill. App. Ct. March 26, 2004), Ex. J. The Illinois Supreme Court denied White's motion for leave to appeal on October 6, 2004. Order Denying PLA, Ex. L.

White filed the instant petition for writ of habeas corpus on April 25, 2005. In his petition to this Court, White includes the first two claims from his direct appeal, and all six claims from his post-conviction petition. Specifically, White contends that: (1) he was not proven guilty beyond a reasonable doubt for accountability in violation of his Fifth and Fourteenth Amendment rights given that the sole eyewitness account was not made to the police until sixteen months after the incident and given that his "involuntary statement" was not made until two years after the incident; (2) his oral statement to Detective Rizzi was coerced and should have been suppressed as involuntary; (3) the State unlawfully pursued a second charge of "accountability" at trial which surprised the defense and created a presumption of guilt; (4) the State knowingly used false and perjured testimony in an attempt to mislead the jury; (5) the trial judge erred in allowing the State to pursue the second "accountability" charge and in directing a verdict of guilty; (6) he was convicted under a statute that is unconstitutionally overbroad and vague; (7) he received ineffective assistance of trial counsel where trial counsel's representation was "tantamount to a guilty plea," and (8) he received ineffective assistance of appellate counsel where his appellate counsel failed to raise meritorious issues, failed to raise the ineffective assistance of trial counsel issue, and "weakly raised and argued only three issues." Pet. at 5-6; see also Pet. Mem. [3].

Respondent argues that White's petition should be denied in its entirety. Respondent first argues that White procedurally defaulted his fourth, sixth, seventh, and eighth habeas claims because the state courts rejected them on independent and adequate state law grounds. Ans. at 36. Respondent then contends that White's remaining four habeas claims fail on the merits. Ans. at 37.

## II.     Standard of Review

### A.     Federal Habeas Relief for State Prisoners

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas petition cannot be granted unless the decision of the state court "was contrary to, or involved an unreasonable application of clearly established Federal law," or "was based on an unreasonable determination of the facts." 28 U.S.C. §2254(d)(1-2) (2000).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court's decision constitutes an "unreasonable application" of clearly established federal law if the state court identified the correct legal rule but unreasonably applied the controlling law to the facts of the case. *Williams*, 529 U.S. at 407. It should be noted that "an unreasonable application of federal law is different from an *incorrect* application of federal law."

*Id.* at 410. "[U]nreasonable" means that a state court's decision lies "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

## B.     The Exhaustion Doctrine and Procedural Default

Before filing a habeas petition in federal court, a petitioner must have "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); see also *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This exhaustion requirement "serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1972)). It requires the petitioner to assert each of his or her federal claims through one complete round of state-court review, either on direct appeal of his or her conviction or in post-conviction proceedings, before proceeding to federal court. See *O'Sullivan,* 526 U.S. at 845 (concluding state prisoners must give the state court a full and fair opportunity to resolve federal constitutional claims by invoking those claims in "one complete round of the State's established appellate review process"); see also *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). This includes presentation of the claims to appellate courts where review is discretionary when that review is part of the ordinary appellate procedure in the State. *O'Sullivan*, 526 U.S. at 847 (holding that the petitioner in question was required to fully and fairly present his claims to the Illinois Supreme Court in a petition for leave to file an appeal even though that court's review both of direct appeals and post-conviction petitions is discretionary).

To fairly present a claim in state court, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and must also alert the state court that the claim raised is based on federal law.  *Chambers v. McNaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). If the federal court reviewing the habeas petition is not satisfied that the petitioner gave the state courts "a meaningful opportunity to pass upon the substance of the claims [] presented in federal court," the Court cannot reach the merits.  *Chambers*, 264 F.3d at 737-738; see also *Sweeney*, 361 F.3d at 332.

"Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim(s) to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim:  although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(d)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim(s)." *Perruquet*, 390 F.3d at 514 (citing *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); see also 28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001). However, where a petitioner has already pursued state court remedies and there is no longer any state corrective process available to him or her, "it is not the exhaustion doctrine that stands in the path of habeas relief, see 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine of procedural default." *Perruquet*, 390 F.3d at 514.

However, if an opportunity still exists for the petitioner to return to state court to exhaust his or her unexhausted claims, the petitioner has not yet procedurally defaulted those claims and the Court must consider whether to dismiss the petition without prejudice or, if appropriate, stay

the case.  See *Rose v. Lundy*, 455 U.S. 509 (1982); *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006).   Generally a federal district court may not adjudicate a mixed habeas petition.  See U.S.C. § 2254(b)(1)(A); *Rose,* 455 U.S. at 518-19.   Under the total exhaustion requirement, federal district courts are required to dismiss a mixed petition without prejudice to allow petitioners to pursue exhaustion of their claims.  *Lundy*, 455 U.S. at 522.  The petitioner then has the option of returning to state court to exhaust his or her claims or to resubmit his or her habeas petition presenting only the exhausted claims.  *Id.* at 510. Although dismissal without prejudice is the typical response to a mixed petition filed prior to exhausting the available state remedies, the Court may, in the interest of comity or judicial economy, deny a habeas petition on the merits.  See 28 U.S.C. § 2254(b)(2); see also *Granberry v. Greer*, 481 U.S. 129, 134-135 (1987).

In limited circumstances, a court may "stay" a habeas petition to avoid limitations period problems.   The enactment of the AEDPA altered the landscape of federal habeas law by imposing a one-year statute of limitations on the filing of federal petitions while preserving the total exhaustion requirement.   See 28 U.S.C. § 2244(d).   Under the AEDPA, the filing of a habeas petition in federal court does not toll the statute of limitations.  See *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).  As a result, habeas petitioners who file mixed petitions in federal courts run the risk of losing their opportunity for any review of their unexhausted claims.  *Rhines v. Weber*, 544 U.S. 269, 277 (2005).  In an attempt to solve this problem, some district courts have adopted a stay and abeyance procedure.  *Id.* at 275.  The stay and abeyance procedure should be used in "appropriate but limited circumstances."  *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006).  The Seventh Circuit has cautioned that a federal district court may only stay a mixed petition "if the petitioner had good cause for his failure to exhaust, his unexhausted

claims are potentially meritorious, and there is no indication that the petitioner engaged in intentional dilatory litigation tactics." *Id.* at 278.

The procedural default doctrine, also grounded in principles of comity, federalism, and judicial efficiency, normally will preclude a federal court from reaching the merits of a habeas claim when either (1) the claim that was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state law grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Id.*; see also *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 263 & n.9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). Thus, when a habeas petitioner has "exhausted his state court remedies without properly asserting his federal claim at each level of the state court review"—and the opportunity to raise that claim in state court has passed—the petitioner has procedurally defaulted that claim. *Lewis*, 390 F.3d at 1026.

Once a court has determined that a petitioner has procedurally defaulted one or more habeas claims, the default can be overcome only if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or, alternatively, show that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Under the cause and prejudice test, "cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis*, 390 F. 2d at 1026 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Prejudice is established by showing that the violation of the petitioner's federal rights created "not merely * * * a *possibility* of prejudice, but that [it] worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170

(1982)); see also *Lemons v. O'Sullivan*, 54 F. 3d 357, 362 (7th Cir. 1995). A federal court may grant a procedurally defaulted habeas petition even in absence of cause in extraordinary cases where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 466 U.S. at 496. In order to establish that a fundamental miscarriage of justice would result if habeas relief is denied, the petitioner must show that "no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Lewis*, 390 F.3d at 1026 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

**III**.    **Analysis**

    **A.    Petitioner's Failure to Exhaust His Third and Fifth Habeas Claims**

The Court first must consider whether Petitioner exhausted each claim raised in his habeas petition in order to determine whether Petitioner presents a "mixed petition" to this Court. Respondent failed to address whether all of Petitioner's claims had been exhausted, but after careful review, the Court has determined that Petitioner failed to exhaust both his third and his fifth claims for federal habeas relief.

In his request for habeas relief, Petitioner includes new issues in two separate claims, rendering them unexhausted because they were not fully and fairly presented to the Illinois state courts through one full round of review. See *O'Sullivan,* 526 U.S. at 845; *Lewis*, 390 F.3d at 1026. Specifically, Petitioner failed to fully and fairly present all of the allegations supporting his third habeas claim in which he alleges that he was denied a fair trial, due process, and equal protection due to the State's conduct in constructively amending his indictment to include "accountability." Here, Petitioner raises for the first time an additional allegation related to this claim – namely that the State failed to disclose during discovery that the person whom Petitioner would be alleged to have aided and abetted was not and would not ever be charged in connection

with the crime. Similarly, Petitioner failed to fully and fairly present all of the factual allegations supporting his fifth habeas claim in which he alleges that his constitutional rights were violated when the trial judge erred in allowing the State to pursue the second "accountability" charge and in "directing" a verdict of guilty. Here, Plaintiff raises for the first time the underlying factual and legal basis for the second part of this claim that the trial judge's actions amounted to "directing a verdict" against Petitioner.

1. ***Petitioner's Third Habeas Claim that his Constitutional Rights Were Violated by the "Constructive Amendment" of His Indictment Is Unexhausted As Presented to this Court.***

The Court first elaborates on the unexhausted issue in Petitioner's third habeas claim. In his third habeas claim, Petitioner alleges five subparts in support of his allegation that as a result of the State's conduct he was denied his right to a fair trial, due process, equal protection of law, and fair notice of the charges against him. Those subparts are as follows: (1) the State constructively amended the first-degree murder indictment to include a second charge of accountability to first-degree murder after the start of the trial; (2) the State unfairly surprised him and his counsel with the second charge after the start of trial; (3) the State unfairly presented the amendment as a separate and independent charge to the jury; (4) the State used the amendment to create an impermissible mandatory presumption of guilt; and (5) the State failed to disclose during "discovery" that the person that Petitioner would be alleged to have aided and abetted was not and would not ever be charged in connection with the crime. Petitioner did not raise the fifth and final subpart to this claim — that the State failed to disclose that the person that Petitioner would be alleged to have aided and abetted was not and would not ever be charged in connection with the crime — under the corresponding claim in his post-conviction petition in any meaningful manner, but instead raises it here for the first time.

The Court's review reveals that, late in his post-conviction proceedings, Petitioner touched upon this new allegation now included as the fifth subpart to the claim at issue. In his PLA to the Illinois Supreme Court related to his post-conviction proceedings, Petitioner asserted, as part of his underlying factual allegations in support of this claim, that no persons other than him were indicted or charged in connection with the murder of Leslie Logan. Ex. K at 3. Petitioner also stated that he was surprised by the prosecution's suggestion at trial that Petitioner may have merely aided and abetted another man in the shooting, even though that other individual was never charged. *Id.* at 6. However, Petitioner included these statements only as underlying facts in support of his petition for leave to appeal the denial of his first post-conviction petition to the Illinois Supreme Court, which denied him leave to appeal. Petitioner did not present these allegations to the Illinois Circuit Court or Illinois Appellate Court during his post-conviction proceedings. Rather, Petitioner raised them for the first time before the Illinois Supreme Court upon discretionary review, which is insufficient for fair presentment purposes. See *Alvarez v. McGinnis*, 4 F.3d 531, 534-535 (7th Cir. 2003) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)) (holding that a claim is not "fairly presented" for federal habeas purposes if raised for the first time in state court in a petition for discretionary review).

Petitioner's failure to present these new allegations in the initial stages of his post-conviction proceedings would be of no consequence here if Petitioner had asserted his third habeas claim here as it was presented to the trial court and appellate court, effectively dropping the new allegations touched upon but not considered by the Illinois Supreme Court given their denial of his PLA. But Petitioner now asserts a version of those allegations as the basis for what is arguably new theory supporting his third habeas claim: that the State withheld "evidence" favorable to Petitioner, which could be construed as stating a due process claim. Fair

presentment of a claim requires that Petitioner present both the operative facts and the controlling legal principles to each level of the state courts before bringing the claim in a federal habeas petition. See *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). That rule applies both on direct appeal and in collateral post-conviction proceedings. See, *e.g.*, *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999). Although a habeas petitioner is given some leeway in reformulating his or her arguments in terms of "fair presentment" so long as the "substance" of the federal claim(s) remains the same, that leeway is "much more limited" in the due process context than in other constitutional contexts. *Kurzawa v. Jordan*, 146 F.3d 435, 443 (7th Cir. 1998). Here, Petitioner's "reformulation" resulted in a new and separate due process argument for this claim set forth at the fifth subpart. *Id.* (finding that a Petitioner's reformulation of his due process claim resulted in two new, entirely separate due process arguments not presented to the state courts). As such, Petitioner never fairly presented this claim with all of the "operative facts and the controlling legal principles" to each level of the state courts below in his post-conviction proceedings, failing to complete one full round of review, and thus depriving the state courts of the opportunity to decide the claim in its entirety. See *O'Sullivan,* 526 U.S. at 845; *Lewis,* 390 F.3d at 1025.

### 2. *Petitioner's Fifth Habeas Claim that his Constitutional Rights Were Violated by the Trial Court's Conduct Also is Unexhausted*.

In addition, the Court finds that Petitioner failed to exhaust the fifth claim in his habeas petition. In his fifth habeas claim, Petitioner alleges that he was denied his right to a fair trial, due process, and equal protection of law when the trial judge: (1) allowed the State to amend the indictment to include a second charge of accountability to first degree murder via a jury

instruction; and (2) directed a guilty verdict.[4]  Because the exhaustion requirement for federal habeas claims is intended to give state courts a meaningful opportunity to consider the substance of those claims, Petitioner must have placed before the state courts "both the operative facts and controlling legal principles" related to the claim.  *Chambers*, 264 F.3d at 737-38.  Though the language of this claim is identical in his post-conviction petition and his federal habeas petition here, Petitioner failed to offer any legal or factual basis for the second part of his claim in the relevant Illinois state court post-conviction proceedings.  Here, Petitioner argues that the trial judge "directed a verdict" against him by redirecting the attention of the jury to the accountability instruction after a jury question arose.  Pet. Mem. at 29-30.

In the memorandum filed in support of his habeas petition, Petitioner explains that the second part of this claim is in part meant to allege that the trial judge improperly directed the jury's attention to one particular jury instruction, and in doing so influenced the jury and effectively directed a verdict for the State.  Pet. Mem. at 29-30.  However, the record contains no evidence that Petitioner ever asserted that line of argument in support of his post-conviction petition by explaining the underlying legal or factual basis for this second part of the claim to either the Illinois Circuit Court of the Illinois Appellate Court. See Ex. I. This new argument goes beyond what can be reasonably ascertained from the text of the claim, and is clearly beyond what the Illinois Circuit Court considered the scope of the second part of the claim to be.  See Ex. G at 8-9.  Like the new allegations in his third claim before this Court, Petitioner did provide both the operative facts and controlling legal principles to the Illinois Supreme Court in his motion for leave to appeal the denial of his post-conviction petition.  Ex. K at 20-21.  However, as with his third habeas claim, Petitioner's fifth habeas claim was not fairly presented because it

---

[4] The habeas petition technically does not reference who Petitioner accuses of these violations, but his memorandum in support of the petition [3] makes clear that this claim stems from errors Petitioner alleges were made by the trial judge.

was raised for the first time in the Illinois Supreme Court Court, which only conducts discretionary review. *Alvarez*, 4 F.3d at 534-535; see also *Castille*, 489 U.S. at 351 (holding that submission of a new claim to a State's highest court on discretionary review does not constitute fair presentment of that claim to the state courts). The second part of Petitioner's fifth habeas claim claiming the trial judge "directed the verdict" is therefore unexhausted.

### B. Petitioner's Third and Fifth Habeas Claims are Procedurally Defaulted For Failure to Exhaust

As noted above, if a federal habeas petitioner has failed to properly present his federal claim(s) to the state courts, but there is no longer any corrective process available to him, then the petitioner has procedurally defaulted that claim. *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). In such a circumstance, the Court need not consider the proper disposition of a "mixed petition," which applies only where the unexhausted claims may still be corrected by the state courts. The Court now considers whether any state corrective processes remain available to Petitioner under Illinois law. See *Engle v. Isaac*, 456 U.S. 107, 125 (1982) (a court is to look to state law that provides collateral relief to determine whether a petitioner's claims are procedurally defaulted). If not, Petitioner's third and fifth claims are procedurally defaulted absent a showing of cause and prejudice. *Lewis*, 390 F.3d at 1026.

Because Petitioner already pursued certain of his claims in one round of post-conviction proceedings, in order to return to the Illinois courts for consideration of his unexhausted claims Petitioner would be required to file a successive petition for post-conviction relief, and would be required to seek leave of court to proceed. See 725 ILCS § 5/122-1(f) ("One petition may be filed by a petitioner * * * without leave of court"). Leave of court to file a successive post-conviction petition with an additional claim or claims is granted "only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction

proceedings and prejudice results from that failure." *Id.*  Illinois law specifies the following regarding the cause and prejudice standard: "(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*  Moreover, a separate provision in the Illinois post-conviction act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived."  725 ILCS § 5/122-3.  The disposition of an initial post-conviction thus has preclusive effect with respect to all claims that *were raised or could have been raised* in that petition.  See *People v. McDonald*, 365 Ill. App. 3d 390, 392-393 (3rd Dist. 2006) (emphasis added).

The Court has serious doubt that Petitioner could overcome the preclusive effect of his original post-conviction petition in state court, given that he presented a version of his third and fifth habeas claims in that petition, albeit absent the complete operative facts and controlling legal principles.  Petitioner is not, for example, raising a new constitutional claim such as ineffective assistance of appellate counsel that has arisen since his post-conviction proceedings and could be appropriately disposed of in a successive petition.  The Illinois courts likely would find that Petitioner waived his right to bring any additional claims.  *Id.*

However, any consideration of how the Illinois courts might have treated Petitioner's unexhausted claims is unnecessary for this Court's review, because it is the statute of limitations that is fatal to Petitioner's ability to return to state court for further proceedings.  Illinois's post-conviction act specifies that if a petition for certiorari to the United States Supreme Court is not filed on direct appeal, "no proceedings under this [statute] shall be commenced . . . more than 6

17

months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS § 5/122-1(c). Petitioner has long since passed the six-month limitations period, and petitioner has not now alleged in any of his papers "facts showing that the delay" in raising new allegations with respect to these two claims "was not due to his [] culpable negligence." *Id.* Petitioner is therefore barred from further proceedings on limitations grounds in the Illinois courts.

Because the limitations period has passed and Petitioner is barred from further proceedings in the Illinois courts, "state corrective action" no longer exists and Petitioner has procedurally defaulted both his third and fifth habeas claims. *Perruquet*, 390 F.3d at 513. In this instance, Petitioner has neither attempted to make a showing of cause and prejudice that might overcome his procedural defaults, nor invoked the "fundamental miscarriage of justice" exception. See *Coleman*, 501 U.S. at 750; *Lewis*, 390 F.3d at 1026. The Court will not make these arguments for Petitioner. See *Todd v. Schomig*, 283 F.3d 842, 849 (7th Cir. 2002).

C.    **Even Absent Petitioner's Failure to Exhaust and Subsequent Procedural Default, Petitioner's Third and Fifth Habeas Claims Lack Merit**

Even if state corrective action were still available to Petitioner thus avoiding procedural default, this Court could consider Petitioner's unexhausted claims on the merits if the review would result in denial. See 28 U.S.C. § 2254(b)(2) ("An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the application to exhaust the remedies available in the courts of the State."). Here, even if Petitioner could have avoided procedural default on his unexhausted claims, both lack merit. Central to both claims, and all of their various subparts, is the notion that the indictment against him was constructively amended to include a new charge for accountability.

As noted above, Petitioner's third habeas claim is that he was deprived of a fair trial, due process, equal protection of the law, and fair notice of the charges against him, as a result of the State's "constructive amendment" of the first-degree murder indictment to include the charge of accountability to first-degree murder. This claim was included in Petitioner's post-conviction petition as paragraph 1A. Ex. F at 2. The Court believes that Petitioner's claim is premised upon a fundamental misunderstanding of the applicable law.

The clearly established federal law applicable to this claim explains that a constructive amendment to an indictment occurs only when the bases for conviction are broadened, either by the court, the state, or both, beyond those established by the grand jury. See *United States v. Cusimano*, 148 F.3d 824, 829 (7th Cir. 1998) (quoting *United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994)). Courts have found constructive amendment where the crime charged in the indictment is "materially different or substantially altered at trial, [so that] it is [ ] impossible to know whether the grand jury would have indicted for the crime actually proved." *United States v. Trennell*, 290 F.3d 881, 888 (7th Cir. 2002) (citation omitted).

Under Illinois law, "accountability is not a separate offense but merely an alternative manner of proving a defendant guilty of the substantive offense." *Quinn v. O'Sullivan*, 2000 WL 765087 at *3 (N.D. Ill. June 12, 2000) (quoting *People v. Doss*, 99 Ill.App.3d 1026, 1029 (1981)). Put another way, "[a]ccountability is not in and of itself a crime. Rather the [accountability] statute is a mechanism through which a criminal conviction may be reached." *People v. Hicks*, 181 Ill.2d 541, 547 (1998). The Illinois Supreme Court has expressly held that it is proper for a defendant, indicted as a principal for first-degree murder, to be tried and convicted under an accountability theory. See *People v. Ceia*, 204 Ill.2d 332, 361 (2003).

The Circuit Court of Cook County, the first state court to review Petitioner's post-conviction petition, explained that "[t]he State had a new charge of quote unquote accountability of first degree murder, according to [Petitioner]. It's abundantly clear that accountability is not a separate offense, but merely an alternative manner of proving [Petitioner] guilty of the substantive offense." The Illinois Appellate Court summarily affirmed the trial court's rejection of this claim. Ex. J at 2. While the circuit court did not specifically cite any federal precedent to refute petitioner's argument about the constructive amendment of his indictment, it need not have done so to meet the standard under the AEDPA. The reasoning of the state courts is obvious, though perhaps not explicit: because accountability is not a second charge under Illinois law, it is impossible for constructive amendment to have occurred in this instance. Indeed, it is quite easy to determine that the grand jury would have indicted petitioner for the crime proved – petitioner was charged with first-degree murder and was convicted of the very same crime. That decision was not contrary to the applicable, clearly established federal law. In fact it does not raise an issue of federal law at all because there is no dispute that under Illinois law accountability is included in the ambit of a first-degree murder charge. Thus, Petitioner's third claim is meritless, and it cannot be the basis for habeas relief. See *Quinn*, 2000 WL 76087 at *3.

Similarly, in his fifth habeas claim Petitioner argues that he was denied a fair trial, due process, and equal protection of the law, as a result of the trial judge's decision to allow the State to constructively amend the indictment to include a second charge of first-degree murder on an accountability theory via a jury instruction. That claim was included in paragraph 1C of his post-conviction petition. Ex. F at 3. The Circuit Court of Cook County addressed the claim before rejecting it, explaining that Petitioner had simply reframed the argument from his third claim. Ex. G at 8-9. Respondent urges the Court to uphold the determination of the state court.

As previously discussed, the determination by the state courts that no constructive amendment occurred was not contrary to the applicable, clearly established federal law. Thus, Petitioner's fifth habeas claim, which is obviously a second attempt to argue improper constructive amendment of his indictment, is also not a proper basis for habeas relief.

### D. Petitioner's Fourth, Sixth, Seventh and Eighth Habeas Claims are Procedurally Defaulted on Independent and Adequate State Grounds

Respondent contends that Petitioner's fourth, sixth, seventh, and eighth habeas claims are procedurally barred from habeas review by this Court because the state's disposition of those claims rested on independent and adequate state law grounds. The Court agrees.

Federal review of a petitioner's habeas claim is foreclosed when "the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground." *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005). "Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim." *Id.* at 991-92; see also *Coleman*, 501 U.S. at 729-30. To preclude federal review, the state law grounds must be independent of the federal question and adequate to support the judgment. See *Coleman*, 501 U.S. at 729. Adequacy requires that "a state's procedural rule [ ] be proclaimed in advance and regularly followed." *Szabo v. Walls*, 313 F.3d 392, 395-96 (7th Cir. 2002).

#### 1. *The State's Conduct Towards the Jury at Trial*

The Court turns first to Petitioner's fourth claim that he was denied his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial, due process, equal protection, and against incrimination based on improper conduct by the State. Petitioner asserts four subclaims within this claim: (1) that the State misled the jury about the facts and its legal burden; (2) that the State knowingly used a false statement by a witness to obtain a conviction; (3) that the State

knowingly used perjured testimony; and (4) that the State made statements to the jury that were the equivalent of "giving testimony." Pet. at 5. Petitioner first raised this claim in Paragraph 1B of his post-conviction petition presented to the Illinois state courts. Ex. F at 2. Respondent contends this claim is barred from further review due to Petitioner's procedural default on independent and adequate state law grounds. Ans. at 25.

Under Illinois law, "[t]he [post-conviction] petition shall have attached thereto affidavits, records or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS § 5/122-2; see also *People v. Collins*, 202 Ill.2d 59, 66 (2002) (citing *People v. Turner*, 187 Ill.2d 406, 414 (1999)) (the failure to either attach the necessary "affidavits, records, or other evidence" or explain their absence is "fatal" to a post-conviction petition). A petitioner's failure to adhere to that rule bars federal habeas review on a constitutional claim when the state court relied on that default as an independent basis for its decision and did not reach the merits of the claim. See *Hampton v. Leibach*, 347 F.3d 219, 242 (7th Cir. 2003).

Here, Petitioner's failure to abide by this procedural requirement formed the basis for the Illinois state courts' rejection of this claim. In rejecting of the claim, the Circuit Court of Cook County noted that "[Petitioner] makes additional allegations of his Constitutional rights in paragraph 1B, none of which is supported by any affidavits, attachments or any other type of documents." Ex. G at 8. The Circuit Court did not address the merits of the claim, and the Illinois Appellate Court affirmed the Circuit Court without addressing the merits of the claim. Ex. J at 2. The Illinois Appellate Court was the last state court to which this claim was presented on the merits. Its determination represents an independent and adequate state ground for resolution of Petitioner's fourth habeas claim given his failure to attach supporting affidavits or other evidence. See *Hampton*, 347 F.3d at 242. As such, Petitioner's fourth habeas claim is

procedurally defaulted and, absent a showing of cause and prejudice or a showing of "fundamental miscarriage of justice," bars further federal review. See *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred until the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

Here, Petitioner has neither attempted to make a showing of cause and prejudice that would explain away the default, nor invoked the "fundamental miscarriage of justice" exception in order to permit this Court to review his fourth habeas claim despite the default. See *Coleman*, 501 U.S. at 750; *Lewis*, 390 F.3d at 1026. The Court will not make these arguments for him. See *Todd v. Schomig*, 283 F.3d 842, 849 (7th Cir. 2002). As such, habeas relief on the bases stated in Petitioner's fourth claim is denied.

### 2. *The Vagueness and Overbreadth of Illinois Law on Accountability*

In his sixth habeas claim, Petitioner contends that he was denied his rights to a fair trial, due process, and equal protection of the law when he was convicted under a statute that is both vague and overbroad. That claim was included in paragraph 1D of his petition for post-conviction relief, which was reviewed by the Illinois state courts. Ex. F at 3. The paragraph was rejected by the Circuit Court of Cook County as "conclusions, not supported by anything in the record of this case, and not even clear what facts [Petitioner] is referring to." Ex. G at 9. The Circuit Court added no further analysis, (*Id.* at 10) and the Illinois Appellate Court affirmed without addressing the claim's merits. Ex. J at 2.

Petitioner's claim was denied as insufficient because Illinois law demands that "[t]he [post-conviction] petition . . . clearly set forth the respects in which the petitioner's constitutional rights were violated." 725 ILCS § 5/122-2. This procedural basis for the state courts' rejection of the claim was both independent of the federal question and adequate to support the judgment. See *Hampton*, 347 F.3d at 242. Thus, federal review of the claim on the merits is precluded. See *Coleman*, 501 U.S. at 750. As before, petitioner has neither shown cause and prejudice to explain the default, nor argued for application of the "fundamental miscarriage of justice" exception. *Id.*; *Lewis*, 390 F.3d at 1026. Petitioner's request for habeas relief based upon this claim is also denied.

### 3. *Ineffective Assistance of Trial Counsel*

Petitioner's seventh habeas claim is that he was denied his right to effective assistance of trial counsel because his counsel's representation was tantamount to a guilty plea. This claim was raised in his post-conviction petition in paragraph 1E, except there it included a number of subclaims. Ex. F at 3. The Circuit Court of Cook County rejected the claim, explaining that the "allegation [*sic*] in paragraph 1E again are conclusions and not [*sic*] supported by any exhibits, attachments, or other sort of documents * * *." Ex. G at 9. The court went on to say that "in addition, [Petitioner] did in fact testify the motion to suppress statements, and while he did not testify at trial, the Court fully admonished the defendant and he made a voluntary choice not to testify at the trial itself." *Id.* The Illinois Appellate Court summarily affirmed the decision of the circuit court. Ex. J at 2.

Procedural default only bars consideration of a federal claim on habeas review when "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Jefferson v. Welborn*, 222 F.3d 286, 288 (7th Cir. 2000) (citing

*Harris v. Reed*, 489 U.S. 255, 263 (1989)).  "[I]f the state-court decision appears to rest primarily on a merits determination of the petitioner's claims, or to be interwoven with those claims, and does not clearly and expressly rely on the procedural default, there is no independent and adequate state ground."  *Farmer v. Litscher*, 303 F.3d 840, 846 (7th Cir. 2002).  In other words, a district court should presume that lack of merit motivated a state court's ruling where the last state court discusses both the merits of a claim in addition to noting the existence of a procedural default, without explicitly holding that the default was the basis for the judgment.  See *Jefferson v. Welborn*, 222 F.3d at 288; *Smith v. Battaglia*, 415 F.3d 649, 653 (7th Cir. 2005).

Here, the Circuit Court of Cook County was adequately explicit in making its determination that petitioner's failure to abide by Illinois procedural requirements was the basis for the rejection of his claim.  The court never made any determination as to the adequacy of Petitioner's counsel.  As before, the procedural basis for the state courts' rejection of the claim was both independent of the federal question and adequate to support the judgment, which precludes federal review of the claim on the merits.  See *Hampton*, 347 F.3d at 242.  Petitioner has neither shown cause and prejudice to explain the default, nor argued for application of the "fundamental miscarriage of justice" exception.  See *Lewis v. Stearns*, 390 F.2d at 1025.  Consequently, Petitioner's request for habeas relief based upon this claim is procedurally barred from review by this Court.

### 4.  *Ineffective Assistance of Appellate Counsel*

In his eighth and final habeas claim, Petitioner contends that he was denied his right to effective assistance of appellate counsel, because his appellate counsel: (1) failed to raise clearly meritorious issues; (2) failed to raise the ineffective assistance of trial counsel issue against a co-worker; and (3) "weakly raised and argued only three issues."  Pet. at 6.  This claim was raised

by Petitioner in his post-conviction petition as paragraph two.  Ex. F at 3.  The Circuit Court of Cook County rejected the claim, stating that the "allegations in paragraph 2 again are conclusions, general allegations not supported by any affidavits, exhibit [*sic*], attachments or the trial record."  Ex. G at 9.  Under Illinois law, "[t]he [post-conviction] petition shall have attached thereto affidavits, records or other evidence supporting its allegations or shall state why the same are not attached."  725 ILCS § 5/122-2; see also *People v. Collins*, 202 Ill.2d 59, 66 (2002) (citing *People v. Turner*, 187 Ill.2d 406, 414 (1999)) (the failure to either attach the necessary "affidavits, records, or other evidence" or explain their absence is "fatal" to a post-conviction petition). The Illinois Appellate Court summarily affirmed  the Circuit Court's decision.  Ex. J at 2.  As was the case with several other of Petitioner's claims raised here, the procedural basis for the state courts' rejection of the claim was both independent of the federal question and adequate to support the judgment, and federal review of the claim on the merits is therefore precluded. See *Hampton*, 347 F.3d at 242.  Because petitioner has neither shown cause and prejudice to explain the default, nor argued for application of the "fundamental miscarriage of justice" exception, his request for habeas relief based upon this claim is denied. See *Coleman*, 501 U.S. at 750; *Lewis*, 390 F.3d at 1026..

       **E.**      **The Merits of Petitioner's Remaining Habeas Claims**

The Court now considers the merits of Petitioner's two remaining habeas claims which are not subject to procedural default.

       **1.**   *Failure by the State to Prove Petitioner Guilty Beyond a Reasonable Doubt*

In his first habeas claim, Petitioner argues that he was not proven guilty of first-degree murder beyond a reasonable doubt, because neither Terry's eyewitness account nor Petitioner's own inculpatory oral statement were adequate to meet the requisite burden of proof.

Specifically, Petitioner suggests that Terry's account is unreliable because she did not speak to police about the shooting until more than a year after it occurred. Similarly, he asserts that his own statement was both unreliable and untruthful, as a result of the length of time between the shooting and the statement. Petitioner cites his account of the circumstances surrounding his statement as further evidence of its unreliability. Alternatively, he argues that his statement would not be sufficient to support the conviction even if taken as true, because he named another man as the shooter. Respondent argues that this insufficiency of evidence claim was properly rejected by the state appellate court, which found that the evidence supported a finding of guilt beyond a reasonable doubt.

The clearly established Supreme Court precedent applicable to this claim is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1966). The *Jackson* standard does not require that an appellate court "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. This highly deferential standard of review respects the judgment of the trier of fact in resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from the basic facts. See *id.* A guilty verdict should only be overturned when "the record contains no evidence, regardless of how it is weighed, upon which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Starks*, 309 F.3d 1017, 1021 (7th Cir. 2002).

When considering Petitioner's claim that the evidence did not support his conviction, the Illinois Appellate Court reasoned:

> In [Petitioner's] 3 p.m. statement to the police, . . . which the jury knew was made over two years after the shooting, [Petitioner] described how he and his two partners put on hooded sweatshirts, obtained guns, and set out to confront Logan for selling drugs on a spot that they considered to have been claimed. [Petitioner] admitted in his statement that he alone carried a 9 millimeter gun. The bullet recovered from Logan's head and the shell casing found at the scene were both fired from a 9 millimeter Luger. These facts would have allowed the jury to conclude that [Petitioner] shot Logan. [Petitioner's] statement was corroborated by the testimony of Iris Terry, who placed [petitioner] near the scene shortly after the shooting. Terry testified that one or two minutes after the shooting, she went to her front window and saw [Petitioner] and another man run by her house, wearing hooded sweatshirts and carrying guns. The fact that Terry did not voluntarily approach the police with this information and did not implicate [Petitioner] until about 14 months after the shooting was known by the jurors and taken into account when they weighed her credibility. Viewed in the light most favorable to the prosecution, the evidence was sufficient to establish his guilt as the principal. Moreover, even if the jurors had not believed that [Petitioner] was not the actual shooter, there was sufficient evidence to conclude that defendant was accountable for Logan's murder . . .

Ex. C at 25-26. Because the Illinois Appellate Court correctly cited the *Jackson* standard before determining that the evidence against Petitioner supported a finding of guilt beyond a reasonable doubt, this Court must determine on habeas review whether the Appellate Court applied the standard reasonably. See *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1997). This Court holds that it did so. The Appellate Court gave appropriate deference to the determinations made by the trier of fact, and concluded that the evidence, when viewed in the light most favorable to the prosecution, supported the jury's finding of guilt beyond a reasonable doubt. Given the nature of the testimony presented against Petitioner, the Illinois Appellate Court's determination under the *Jackson* standard was not unreasonable. Petitioner's request for habeas relief based upon this claim is denied.

## 2.    *Improper Admission of an Involuntary Oral Statement*

Petitioner's second habeas claim is that his oral statement to Detective Rizzi should have been suppressed, because it was given involuntarily.   He argues that the statement was involuntary because it was a product of deprivation, coercion, and false promises.   Specifically, he states in his petition that he was taken from his home in the middle of the night, that he was not given any food or permitted to make a telephone call in the eleven hours preceding his statement, that no attorney was present when he made the statement even though he had requested one immediately upon his arrest, and that he never signed a written waiver of his *Miranda* rights.   Petitioner's points can be distilled into two distinct arguments – that he was denied his constitutional right to counsel, and that his statement was made involuntarily. Respondent contends that the state appellate court's findings on these issues were appropriate and should therefore be upheld.   The Illinois Appellate Court addressed these two issues separately in its review of Petitioner's claim on direct appeal.

### i.    Right to Counsel

Petitioner's first argument regarding the involuntariness of his statement to police is premised on his assertion that he was denied his constitutional right to counsel before making the inculpatory oral statement at issue.   The United States Supreme Court determined in *Miranda v. Arizona*, 384 U.S. 436 (1966), that putative defendants must be advised that they have the right to the presence of an attorney during custodial interrogation.   See *Edwards v. Arizona*, 451 U.S. 477, 481-82 (1981) (citing *Miranda*, 384 U.S. at 479).   "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present."   *Miranda*, 384 U.S. at 474. To invoke this right, the accused must make "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with

custodial interrogation by the police." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). Once

such a request is made, further interrogation without counsel may only take place when "the

accused himself initiates further communication, exchanges, or conversations with the police."

*Edwards*, 451 U.S. at 484-85.

The Illinois Appellate Court addressed the question of whether Petitioner was made

aware of his right to counsel, noting that "[w]hile defendant testified that the detectives who

spoke with him at 3 p.m. did not advise him of his rights, Detective Rizzi stated both at the

hearing on the motion to suppress and at trial that he read defendant his *Miranda* rights and

defendant indicated he understood." Ex. C at 23. The appellate court went on to explain that

"[i]n allowing the 3 p.m. statement to be admitted, the trial court found Detective Rizzi to be

more credible than defendant, and thus resolved the conflicts in the testimony regarding

voluntariness in the State's favor. This was the trial court's prerogative." *Id.* In regard to the

issue of whether Petitioner had unambiguously invoked his constitutional right to counsel at the

time his inculpatory statement was given to Detective Rizzi, the Illinois Appellate Court

explained:

> The evidence supports the conclusion that defendant did not
> invoke his right to counsel before the interview at issue, which
> occurred at 3 p.m. While [Petitioner offered evidence that he
> repeatedly requested a lawyer, beginning at the time of his arrest],
> this testimony was contradicted by the State's witnesses. . . .
>     At a hearing on a motion to suppress, it is the responsibility
> of the trial court to resolve conflicts in the evidence and determine
> the credibility of the witnesses. The trial court may choose to
> believe the State's version of events rather than the defendant's
> version. Here, in determining that [Petitioner]'s fifth amendment
> right to counsel was not violated at the 3 p.m. interview, the trial
> court chose to believe the State's witnesses over [Petitioner and his
> witness]. This decision was not against the manifest weight of the
> evidence. After reviewing the record, we conclude that
> [Petitioner]'s 3 p.m. statement to Detective Rizzi was admissible.
> Our determination that the trial court's decision that [Petitioner]'s

> right to counsel was not violated was not against the manifest
> weight of the evidence renders moot the question of who initiated
> the 3 p.m. conversation. The issue of initiation is legally
> significant only once the right to trial has been invoked. The trial
> court found [Petitioner] did not invoke his right to counsel before 7
> p.m. on January 21, 1998.

*Id.* at 20-21 (citations omitted). Prior to its determination that Petitioner's statement to Detective

Rizzi was admissible, the Illinois Appellate Court correctly cited the controlling, clearly

established federal law. See *id* at 20. Therefore, this Court must determine on habeas review

only whether the Illinois Appellate Court reasonably applied that law. This Court concludes that

the Illinois Appellate Court did so, properly deferring to the trial court on the factual issue of the

time of Petitioner's invocation of his right to counsel. The Illinois Circuit Court determined that

Petitioner was made aware of his right to counsel, but failed to invoke that right until after he

made the inculpatory oral statement to Detective Rizzi. As such, Petitioner's constitutional right

to counsel was not violated.

### ii. Voluntariness of the Statement

Petitioner's second argument that his oral statement was improperly admitted rests on his

contention that his statement was involuntary. "The test for voluntariness of a confession is

whether the totality of circumstances indicate that the statement was freely made." *United States

v. White*, 979 F.2d 539, 543 (7th Cir. 1992) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226

(1973)). Voluntariness requires that a confession be "the product of a rational intellect and free

will and not the result of physical abuse, psychological intimidation, or deceptive interrogation

tactics that have overcome the defendant's free will." *United States v. Dillon*, 150 F.3d 754, 758

(1998). Some of the factors taken into account in determining whether a defendant's will was

overborne include "the youth of the accused, his lack of education, or his low intelligence, the

lack of any advice to the accused of his constitutional rights, the length of detention, the repeated

and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *Schneckloth*, 412 U.S. at 226 (citations omitted).

The Illinois Appellate Court did not cite federal law in determining that Petitioner's statement was made voluntarily. Thus, this Court's charge on habeas review is to determine whether the state court determination is "contrary to" clearly established federal law. 28 U.S.C. § 2254(d)(1). The appellate court's analysis of the claim was as follows:

> Here, [Petitioner] was a few days shy of 23 when he was arrested. He was familiar with the criminal justice system, as evidenced by his three prior convictions. There is no allegation that [Petitioner] lacked intelligence . . . . While [Petitioner] testified that the detectives who spoke with him at 3 p.m. did not advise him of his rights, Detective Rizzi stated both at the hearing on the motion to suppress and at trial that he read defendant his *Miranda* rights and [petitioner] indicated that he understood. [Petitioner] and Detective Rizzi also disagreed as to whether [Petitioner] was handcuffed at the time of the interview and as to whether [Petitioner] was told that he did not need a lawyer because he was only being held as a witness to Logan's murder. [Petitioner] testified at the suppression hearing that he had not asked for food by the time the 3 p.m. interview took place because he had been sleeping and was handcuffed to the wall. Finally, while [Petitioner] had been in custody for about 11 hours by the time Detective Rizzi interviewed him, the interview was relatively short, only about 20 to 30 minutes.
> After reviewing the totality of the circumstances, we uphold the trial court's judgment. In allowing the 3 p.m. statement to be admitted, the trial court found Detective Rizzi to be more credible than [petitioner], and thus resolved the conflicts in the testimony regarding voluntariness in the State's favor. This was the trial court's prerogative . . . [and] was not manifestly erroneous. We agree that [petitioner]'s will was not overborne and that [petitioner]'s 3 p.m. statement was voluntary and admissible.

Ex. C at 22-23 (citation omitted). The Illinois Appellate Court's determination regarding the voluntariness of Petitioner's statement is not contrary to clearly established federal law. The court reasonably concluded that the totality of the circumstances surrounding the statement did not show evidence of coercion, using the very same factors that would have been addressed

under federal precedent.  See, *e.g.*, *Schneckloth*, 412 U.S. at 226 (citations omitted).  Petitioner's age, his familiarity with the legal system, his intelligence, his awareness of his constitutional rights, the length and nature of his detention, and the length of questioning were all addressed by the court.  Because the Illinois Appellate Court's determination as to the voluntariness of Petitioner's statement was not contrary to federal precedent, Petitioner's claim for habeas relief based on his contention that his statement was involuntary must be denied.

**IV.     Conclusion**

For the reasons stated above, the Court denies White's petition for writ of habeas corpus [1] and this case is dismissed.

Dated:  September 24, 2008         _____
                                   Robert M. Dow, Jr.
                                   United States District Judge